UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICTOR L. GUMBS, *a single person*, and KELLIE THORNE, *a single person*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM FIRE & CASUALTY COMPANY, *a foreign insurance company authorized to conduct business within the State of Washington*, <br><br> Defendant. | CASE NO. C07-1514-JCC <br><br> ORDER |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 12), Plaintiffs' Response (Dkt. No. 14), and Defendant's Reply (Dkt. No. 16). The Court has carefully considered these papers, their supporting declarations and exhibits, and the balance of relevant materials in the case file, and has determined that oral argument is not necessary. For the reasons explained below, the Court hereby DENIES Defendant's motion and rules as follows.

I. **BACKGROUND**

On May 20, 2004, Defendant State Farm Fire & Casualty Company ("State Farm") issued Plaintiffs Victor Gumbs and Kellie Thorne a homeowner's insurance policy for a residence located at

ORDER – 1

2455 S. 116th Way in Seattle, Washington ("Seattle house"). (Policy (Dkt. No. 13-2 at 3).) The policy covered the dwelling and personal property. (*Id.*) The policy application listed Gumbs' social security number ("SSN") as xxx-xx-4270 (Policy App. (Dkt. No. 13-2 at 28).) When Plaintiffs completed their application, they estimated the value of their personal tools at $20,000, and their instruments, cameras and sports equipment at $6,000. (Thorne Dep. 26:23–28:14 (Dkt. No. 13-9 at 24).) Apparently, Plaintiffs never received a copy of the policy from Defendant. (Thorne Dep. 39:21–40:8 (Dkt. No. 15 at 6).)

On August 9, 2004, Gumbs reported a burglary of his Seattle home to police. (Incident Report (Dkt. No. 13-9 at 31).) Gumbs reported a forced entry through the front door, damage to the frame, and theft of numerous tools and personal property. (*Id.*) He also took pictures depicting the damaged door frame. (Damage Pictures (Dkt. No. 15 at 9–10).) On August 16, 2004, Gumbs reported the theft to State Farm. (Gumbs' 1st Stmt. (Dkt. No. 13-2 at 34).) Gumbs told State Farm that he had returned home around 2:00 p.m. on August 9 to discover the front door pushed in and the door frame split. (*Id.* at 2.) He noticed numerous items missing, including a laptop computer, tools, his keys and wallet, which contained cash, gift cards, and credit cards. He also reported that he had cancelled his stolen credit cards and had begun to compile a list of missing tools. (*Id.* at 2–5.) Gumbs confirmed that he and Throne lived together at the Seattle house. (*Id.* at 1.)

A State Farm adjuster met with Gumbs to inspect the home on August 25, 2004. (Robinson Decl. ¶ 3 (Dkt. No. 13-3 at 26).) After the inspection, the adjuster apparently expressed concerns about the claim to State Farm, including that: Gumbs had provided a seven-page list of missing tools, Gumbs and Thorne were new to State Farm, and Gumbs and Thorne were performing a remodel of the home while reportedly living in the garage. (*Id.*) Two days later on August 27, the claim was assigned to claim representative Kimberly Robinson in the Special Investigation Unit. (*Id.*) Robinson's review of the file determined that Gumbs appeared to have used multiple names and two different social security numbers. Thereafter, Robinson decided to undertake a detailed investigation of the claim. (*Id.*)

On September 28, 2004, Robinson recorded a statement from Thorne. (Thorne Stmt. (Dkt. No.

ORDER – 2

13-4 at 6).) Thorne stated that she and Gumbs had been living at the Seattle house since the middle of June, 2004, and had been sleeping in the garage on the date of the loss because of the renovation. (*Id.* at 8–10.) She said that before moving to Seattle, they had lived in Gumbs' house located at 15108 NE 177th Drive in Woodinville, Washington ("Woodinville house"). (*Id.* at 2 & 42.)

Robinson then questioned Thorne about her specific activities during the day of the loss. Initially, Thorne stated that she and Gumbs left the Seattle house together that morning, then she dropped Gumbs off to get a ride with somebody else, and took a nap in her car until reporting to work at 2:30 p.m. (*Id.* at 8, 24–27.) Later in the same interview, Thorne offered that she wanted to change her statement. (*Id.* at 40.) She stated that after leaving the Seattle house that morning, they actually went to the Woodinville house to get some sleep. (*Id.* at 40.) She explained that they had been working all weekend and all night on the remodel and went to the Woodinville house to rest. (*Id.*) Thorne further explained that she did not initially disclose their trip to the Woodinville house because she was concerned about coverage under the policy if they were not living at the Seattle house every single day. (*Id.* at 41.) She stated that they lived at the Seattle house "for the hours that most people live places." (*Id.*) She also told State Farm that Gumbs had previously filed a petition for bankruptcy, which was dismissed. (*Id.* at 42).

State Farm also took recorded statements from Gumbs on October 12 and November 2, 2004. Gumbs confirmed Thorne's revised account of their activities on the morning of the loss. (Gumbs' 2nd Stmt. 16–17 (Dkt. No. 13-5 at 13).) He stated that he spent seventy percent or more of his time at the Seattle house. *(Id.* at 16.) He said his SSN was xxx-xx-2515 and denied ever using another number. (*Id.* at 2.) Gumbs stated that teaching at the University of Phoenix was his main job and claimed an annual salary of $10,000 to $30,000, depending on how many classes he taught. (*Id.* at 92.) He said that he was one year behind in mortgage payments on the Woodinville house, but that he had roughly $100,000 in equity in the house. (*Id.* at 90). Gumbs stated that his petition for bankruptcy had been dismissed and he was in a dispute with his ex-wife over child support payments. (*Id.* at 86 & 90.)

State Farm continued a detailed investigation of the claim, which included: (1) a review of

ORDER – 3

Gumbs' October 6, 2003, Petition for Chapter 13 Bankruptcy, (2) a review of Gumbs' July 7, 2004, Response to a Motion to Modify Post-Secondary Support in a dissolution matter, and (3) examinations under oath of Thorne on May 2, 2005, and of Gumbs on May 4 and May 10, 2005. (*See* Mot. 5–10 (Dkt. No. 12).) State Farm contends that this investigation revealed numerous misrepresentations of material facts regarding the claim. (Mot. 19 (Dkt. No. 12).)

The parties do not dispute that Gumbs provided Robinson with an inventory list (together with some receipts) for the items stolen from the residence, his social security card, voter registration card, and gun permit. (*See* July 6, 2005, Letter (Dkt. No. 13-3 at 18); Gumbs Dep. 187–90 (Dkt. No. 15 at 13).) Gumbs asserts that he provided Robinson with a signed Proof of Loss form in February 2005, but that she had misplaced it. State Farm claims that it did not receive the form, which was signed February 25, 2005, until May 9, 2005. (Proof of Loss (Dkt. No. 13-8 at 17).) On the form, Gumbs claimed a total loss of $20,000: $1,000 in property damage and $19,000 in replacement costs for stolen property.

On September 27, 2005, State Farm informed Gumbs and Thorne that it would not extend coverage for the loss based on material misrepresentations made during the course of the investigation. (Denial Letter (Dkt. No. 13-3 at 22).) Specifically, the denial letter stated that "the evidence concludes that you provided false or misleading information concerning your financial condition, your activities on the date of the loss and items you are claiming as stolen . . . . Additionally, there is evidence to support that the loss may not have occurred or that you caused or procured the loss." (*Id.*)

Plaintiffs filed the instant action on March 22, 2007, in King County Superior Court, alleging that State Farm's denial of coverage breached its statutory duties, its duty of good faith, the insurance contract, and the Consumer Protection Act. (Compl. (Dkt. No. 13-8 at 22–26).) Thereafter, State Farm removed to this Court. (Removal (Dkt. No. 13-9 at 2).) State Farm now moves for summary judgment, requesting the Court to declare that State Farm abided by its duty of good faith, complied with statutory obligations, and properly denied coverage on Plaintiffs' claim. (Mot. 1 (Dkt. No. 12).)

ORDER – 4

## II. ANALYSIS

### A. Legal Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

### B. Breach of Contract Claim

State Farm argues that Plaintiffs' breach of contract claim should be dismissed because their misrepresentations of material facts justified denial of coverage under the express terms of the insurance policy. (Mot. 20 (Dkt. No. 12).) The relevant policy provision upon which State Farm relied provides:

> Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after the loss.

( Policy 19 (Dkt. No. 13-2 at 16).) Plaintiffs respond that genuine issues of material fact remain regarding whether any inconsistent information provided during the claim process was intentional and material.

ORDER – 5

(Resp. 8 (Dkt. No. 14).)[1]

To prevail on summary judgment on this issue, State Farm must demonstrate the absence of a genuine issue of material fact regarding whether it breached the contract by denying coverage. *See* FED. R. CIV. P. 56(c). The specific legal inquiry at hand determines what is a "material fact" for summary judgment purposes. *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). State Farm's denial letter specifically stated that "the evidence concludes that you provided false or misleading information concerning your financial condition, your activities on the date of the loss and items you are claiming as stolen."[2] (Denial Letter (Dkt. No. 13-3 at 22).) Consequently, State Farm must establish that no genuine issue of material fact exists as to whether Plaintiffs "intentionally concealed or misrepresented any material fact" relating to their (1) financial condition, (2) activities on the date of the loss, or (3) items claimed as stolen. This necessarily requires a showing of falsity, intent, and materiality. *See Glamuzina v. Glens Falls Ins. Co.*, No. C07-5011, 2008 WL 2485572, at *4 (W.D. Wash. 2008).

In Washington, a misrepresentation is material when it "concerns a subject 'relevant and germane to the insurer's investigation as it was then proceeding' at the time the inquiry was made." *Tran v. State Farm Fire & Cas. Co.*, 961 P.2d 358, 363 (Wash. 1998) (*quoting Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2d Cir. 1984)). Whether a misrepresentation is "material" is generally a mixed question of law and fact, and may be decided on summary judgment only where reasonable minds could

---

[1] Plaintiffs also assert that State Farm must prove the tort of fraud or an "intent to deceive." (Resp. 10, 14 (Dkt. No. 14).) Plaintiffs are incorrect. Unlike cases involving misrepresentations by the insured in *applying* for insurance, an insurer need not establish fraud in cases involving misrepresentations by an insured in *claiming coverage* under the contract. *St. Paul Mercury Ins. Co. v. Salovich*, 705 P.2d 812, 814–15 (Wash. Ct. App. 1985). Here, State Farm denied coverage for alleged misrepresentations made during Plaintiffs' claim for coverage. Therefore, under the express terms of the policy, State Farm need only establish that Plaintiffs' representations were false, intentional, and material to the investigation.

[2] The denial letter also stated: "Additionally, there is evidence to support that the loss may not have occurred or that you caused or procured the loss." In its motion, however, State Farm does not dispute that the loss occurred, present evidence of the absence of a loss, or otherwise argue that Plaintiffs' caused or procured the loss. Instead, its motion is based on Plaintiffs' alleged misrepresentations of facts material to their claim. (*See* Mot. 18–20 (Dkt. No. 12).)

ORDER – 6

not differ on the question. *Onyon v. Truck Ins. Exch.*, 859 F. Supp. 1338, 1341 (W.D. Wash. 1994). State Farm alleges that Plaintiffs made numerous misrepresentations of "material facts" that justified their denial of coverage. The Court will address each major contention below.[3]

State Farm places much emphasis on Thorne's initial account of her and Gumbs' activities on the morning of the loss. There is no dispute that she initially misrepresented their whereabouts. However, Thorne voluntarily corrected herself later during the *same interview* and explained why she had initially failed to reveal that they returned to the Woodinville house to sleep (Thorne Stmt. 40-42 (Dkt. No. 13-4 at 22–25). Gumbs' subsequent statement corroborated Thorne's revised account of their activities that morning. Thorne's change of story goes to her credibility, which can only be weighed by the factfinder at trial. Because Thorne corrected herself during the same interview, State Farm obtained a clear and corroborated description of their activities on the day of the loss. Consequently, there remains a genuine issue of fact as to whether this initial misrepresentation was sufficiently material to State Farm's ongoing investigation to justify denying coverage.

State Farm also takes issue with the discrepancy between the SSN Gumbs provided in his insurance application and his actual SSN, xxx-xx-2515, provided later. In his examination under oath ("EUO"), Gumbs explained that the number on the application, xxx-xx-4270, was a business identification number ("BIN"), not his SSN. (Gumbs' EUO 13 (Dkt. No. 13-8 at 5).) Gumbs stated that he had owned and operated a number of businesses, including Eleven Trees Engineering Limited. (*Id.* at 14–17.) State Farm's investigation found that the tax identification number for Eleven Trees Engineering is 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, which did not match the supposed BIN provided by Gumbs. (Dept. of Rev. Records (Dkt. No. 13-8 at 2).) State Farm contends that Gumbs' use of multiple SSNs affected its "ability to conduct a proper financial background investigation," but does not explain how its investigation was hampered. (Reply 10 (Dkt. No. 16).)

---

[3]The Court does not address each and every alleged misrepresentation, but rather only those with evidentiary support in the record at the time State Farm denied Plaintiffs' claim.

ORDER – 7

State Farm has failed to meet its burden of demonstrating that the SSN discrepancy was an intentional misrepresentation material to their investigation. Gumbs also told State Farm that he operated Integrated Systems, which had a different BIN from Eleven Trees. (EUO 15 (Dkt. No. 13-8 at 6).) Thus, the number on the application could match the BIN number for Integrated Systems or another of Gumbs businesses, and State Farm has not presented evidence to discount such a match. Regardless, because Gumbs provided his actual SSN when he was first asked by the investigator, State Farm has not established that the discrepancy was necessarily "material" to its continued investigation. At this summary judgment stage, all reasonable inferences must be drawn in Plaintiffs' favor. *See Sherman v. State*, 905 P.2d 355, 366 (Wash. 1995). A reasonable factfinder could find that the discrepancy was either inadvertent or immaterial to the investigation of the claimed loss.

State Farm also contends that Gumbs misrepresented how much equity he had in his Woodinville house. In Gumbs' October 6, 2003, bankruptcy petition and in a July 1, 2004, letter regarding a child support dispute, Gumbs indicated he had no equity in his Woodinville house. (Mot. 19 (Dkt. No. 12).) But later, on October 12, 2004, Gumbs told State Farm that he had roughly $100,00 in equity in the house (Gumbs' 2nd Stmt. 90 (Dkt. No. 13-5 at 36).) In deposition testimony, Gumbs' explained that sometime after he wrote the July 1 child support letter and before he gave the October 12 statement, there was an appraisal that revealed he had more equity in the house than he had previously thought. (Gumbs' Dep. 267:10–269:8 (Dkt. No. 15 at 15).) Regardless of whether this is true, the Court may not make credibility determinations or weigh the evidence in ruling on State Farm's summary judgment motion. *See Anderson*, 477 U.S. at 255. Here, a factual dispute certainly exists as to whether Gumbs misrepresented the amount of equity in the Woodinville house, and therefore the Court cannot find as a matter of law that Gumbs made an intentional and material misrepresentation.

State Farm argues that Gumbs made a material misrepresentation when he claimed that he had declared the stolen tools as assets in his bankruptcy petition, when the petition indicates that he did not. The alleged misrepresentation went as follows:

ORDER – 8

|   |   |   |
|---|---|---|
| 1 | Q. | Now with regards to the Chapter 13 bankruptcy, are these tools declared as part of your assets? |
| 2 | A. | Um, well, let's see . . . I can't remember . . . |
|   | Q. | Hum? |
| 3 | A. | Yeah, I suppose they were. |
|   | Q. | Would that be a yes? |
| 4 | A. | Yes. |

(Gumbs' 2nd Stmt. 92 (Dkt. No. 13-5 at 38).) Gumbs later explained that he actually did not include all his tools as assets in the petition because, after conferring with his attorney, he considered them "household assets" that his son would inherit. (Gumbs' Dep. 71:5–73:9 (Dkt. No. 13-9 at 15).) Here again, a factual dispute remains here as to whether Gumbs was intentionally misrepresenting a material fact when he first said "I can't remember," and then answered "I suppose they were."

Finally, State Farm contends that Gumbs misrepresented his income and financial condition. In support, it points to inconsistencies between what Gumbs claimed his income to be and the amount indicated in his bankruptcy petition, child support dispute, and income tax returns. The record undoubtedly raises discrepancies between Gumbs' claimed income and the income indicated on his tax returns that may not be subject to easy explanation. However, questions of fact may be determined as a matter of law only when reasonable minds could reach but one conclusion from them. *Sherman*, 905 P.2d at 367. Here, State Farm has not shown that the financial information Gumbs' provided to it was false and the information in the petition or tax returns is true. In other words, State Farm has not demonstrated that Gumbs actually provided it with false information. Moreover, even if the information was false, it may not have been material since Gumbs did not withhold financial records and State Farm was able to obtain significant information on Gumbs' financial condition. *See Glamuzina*, at *4. The Court cannot conclude as a matter of law that these discrepancies were false and material.

In sum, the evidence, when viewed in the light most favorable to Plaintiffs, reveals that disputed material facts remain regarding (1) whether Plaintiffs' representations were in fact false, and (2) whether any false representations were sufficiently material to State Farm's investigation to justify denying coverage under the policy. State Farm has presented evidence of a myriad of inconsistent statements and

ORDER – 9

representations made by Plaintiffs throughout the course of the extended investigation. While the evidence undoubtedly raises some questions and credibility issues, the Court cannot draw inferences against the nonmoving party to conclude as a matter of law that Plaintiffs intentionally made false representations that were material to the ongoing investigation. State Farm has failed to meet its burden of demonstrating the absence of a genuine issue of material fact. Accordingly, the Court hereby DENIES State Farm's motion for summary judgment on the breach of contract claim.

**C.    BAD FAITH CLAIM**

State Farm argues that there is no evidence that it acted unreasonably in denying coverage, and therefore Plaintiffs' bad faith claim should be dismissed. An insurer has a duty of good faith to its insured and a violation of that duty may give rise to a tort action for bad faith. WASH. REV. CODE § 48.01.030. To establish bad faith, a plaintiff must present evidence that the insurer's action was "unreasonable, frivolous, or unfounded." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). An insurer must have a reasonable basis for denying coverage, and may be found to act in bad faith where it denies coverage based upon suspicion or conjecture. *Indus. Indem. Co. v. Kallevig*, 792 P.2d 520, 526 (Wash. 1990). The question of whether an insurer acted in bad faith remains a question of fact. *Smith*, 78 P.3d at 1277. An insurer is entitled to dismissal on summary judgment "only if there is no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances." *Id.* If the insured presents evidence that "the insurer's alleged reasonable basis was not the actual basis for its action, or that other factors outweighed the alleged reasonable basis," then summary judgment is not appropriate. *Id.* at 1278.

Material facts remain in dispute regarding whether State Farm reasonably denied coverage for Plaintiffs' loss. Plaintiffs have at least presented evidence that State Farm may have denied coverage because it believed either that the theft did not occur or that Plaintiffs caused the loss. For example, in its denial letter, State Farm explicitly stated: "Additionally, there is evidence to support that the loss may not have occurred or that you caused or procured the loss." (Denial Letter (Dkt. No. 13-3 at 22).) But State

ORDER – 10

Farm does not argue that the loss did not occur or otherwise present evidence that Plaintiffs caused the loss. Because sufficient issues of material fact remain as to the reasonableness of State Farm's denial of coverage, summary judgment on this claim is not appropriate.

**D.     CONSUMER PROTECTION ACT CLAIM**

The Washington Consumer Protection Act ("CPA") prohibits unfair or deceptive acts or practices in the conduct of any trade or business. WASH. REV. CODE § 19.86.010 *et seq.* Insurers are specifically prohibited from engaging in unfair or deceptive practices, including those defined in regulations promulgated by the insurance commissioner. WASH. REV. CODE § 48.30.010(1). Pursuant to its statutory authority, the commissioner promulgated regulations defining unfair or deceptive practices in the business of insurance. *See* WASH. ADMIN. CODE § 284-30-300 *et seq.* An insured can establish a *per se* unfair trade practice under the CPA by demonstrating a single violation of these insurance regulations. *Indus. Indem.*, 792 P.2d at 530.

Plaintiffs allege that State Farm violated the insurance regulations by failing to certify the policy, and failing to accept or deny Plaintiffs' claim within fifteen days of receiving the proof of loss. (Resp. 17–18 (Dkt. No. 14).) State Farm concedes that it did not issue the denial letter within fifteen days of receipt of the proof of loss form, but contends that it acted reasonably under the circumstances. (Reply 12 (Dkt. No. 16).) It also asserts that its failure to certify the policy because it was considered void did not misrepresent the terms of the policy. (*Id.*)

State Farm has not met its burden of demonstrating the absence of a material fact as to whether it violated the insurance regulations. Because State Farm concedes that it failed to issue the denial letter within the time required by the regulations, and a single violation could be a violation of the CPA, sufficient issues of fact remain in dispute to foreclose dismissal of the CPA claim on summary judgment. Therefore, the Court cannot conclude, as a matter of law, that State Farm did not violate any of the insurance regulations.

ORDER – 11

## III. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's motion for summary judgment.

SO ORDERED this 2nd day of October, 2008.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 12